Opinion issued August 28, 2008 















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00454-CV

__________


CHING ENTERPRISES, INC. AND AN QUOC "ANDY" NGUYEN,
Appellants


V.


DORIS BARAHONA, Appellee






On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2004-20478






MEMORANDUM OPINION

 Appellants, Ching Enterprises, Inc. ("Ching") and An Quoc "Andy" Nguyen,
challenge the trial court's final judgment, entered after a bench trial, in favor of
appellee, Doris Barahona, awarding her approximately $145,000 for personal injuries
that she sustained while working at Ching. Appellants present sixteen issues for
review. In their first, second, and third issues, appellants contend that the trial court
erred in rendering judgment in favor of Barahona because she failed to prove that
appellants' negligence proximately caused her injuries, in overruling their motion for
directed verdict, and in not allowing them to present two witnesses. In their fourth
through eighth and eleventh issues, appellants contend that there is no evidence or
insufficient evidence to support the trial court's awards for loss of household
services, mental anguish, physical impairment, future pain and suffering, and
disfigurement and that there is no evidence or insufficient evidence to support the
trial court's findings of fact and conclusions of law "regarding [Barahona's] severe,
disabling, or disfiguring injuries." In their ninth, tenth, and twelfth issues, appellants
contend that there is no evidence or insufficient evidence to hold Nguyen personally
liable, there is no evidence Nguyen "abused [the] corporate form," and there is "no
evidence justifying the findings of fact and conclusions of law that pierce the
corporate veil." In their thirteenth and fourteenth issues, appellants contend that the
findings of fact and conclusions of law that the shredder with she was working when
she was injured was defective are against the greater weight of the evidence and that
"there is no evidence that the shredder was in need of repair." In their fifteenth and
sixteenth issues, appellants contend that "some findings of fact are inconsistent" and
that there is insufficient evidence to support certain findings of fact and conclusions
of law.

 We modify the judgment of the trial court and affirm as modified. Factual and Procedural Background

 In her petition, Barahona alleged that, on September 19, 2002, while working 
as an employee for Ching, a non-suscriber of workers' compensation insurance, she
severely injured her left hand when operating a carrot-grating machine. (1) At the bench
trial, Barahona testified that, in March 2002, she was hired by Nguyen to work at
Ching, a small company that made egg rolls. Barahona prepared the egg roll mix by
first shredding carrots with the carrot-grating machine. She would put the carrots in
"a cup" on the machine, and the carrots were then cut by blades turned by a screw. 
Barahona explained that the machine was old, she was never given any safety
instructions, and she had not been provided any safety manuals. When she was
injured, Barahona had attempted to fill up the cup with carrots because "later on [she]
would want to turn [the machine] on." She explained that "as [she] was putting the
carrots in, the machine "turned on by itself" and "grabbed [her] hand because [she]
put the carrot in and it pulled [her] hand in." Barahona denied that the machine was
on when she placed the carrots in the cup or that she had put her hand in the machine
to remove a stuck carrot.

 Barahona further testified that, after the incident, she was transported to a
hospital and told that her "bones were broken." The hospital "only washed [her]
fingers" because it did not have a specialist for broken bones. After Barahona was
sent to another hospital, she underwent two operations on her fingers and
subsequently received treatment and therapy. 

 When asked to describe her pain and suffering, Barahona stated that she felt
"really awful," especially during cold weather, she "could not grab anything with the
hand," and she had been "suffering a lot" because her injuries interfered with her
daily tasks. It took her about six months until she was able to grab or lift something
with her hand, but she cannot grab or lift anything heavy. Barahona explained that
it is also painful when she straightens her finger. Barahona's doctor told her that she
needed another operation to fix her hand, which would cost approximately $3,000. 
He also told her that her hand would hurt when it was cold because of the screw
placed inside her hand. At the time of trial, Barahona still suffered from pain in her
hand, and she had visible scarring on her fingers. She demonstrated to the trial court
how she was unable to bend her left hand.

 Barahona agreed that one of the reasons that she did not work after the accident
was to take care of her baby, but she further stated that she had dedicated herself to
taking care of her children because her hand prevented her from working. At the time
of trial, Barahona could not make egg rolls because she could not bend her fingers. 
She expected to be able to make egg rolls again after her third operation. 

 On cross-examination, Barahona agreed that shredding carrots was a routine
operation, she had previously operated the machine without incident, she was not
aware of anyone else being injured by the machine, and she thought that she was
operating the machine safely. Barahona maintained that the machine was off when
she put the carrots into it before the accident, and she denied that the machine was
configured with a lever and plate device so that the operator could push the carrots
into the machine without getting near the blades. Barahona noted that the machine
looked old and that there was tape covering "bare wires." Barahona also explained
that an employee at Ching named Mimi showed her how to operate the machine. 

 Nguyen testified that although he had opened Ching in 1978 to make egg rolls,
Ching had not manufactured egg rolls since 2000. Nguyen explained that when
Barahona was injured, Ching was not in operation and Barahona was not his
employee. He also stated that Barahona was not authorized to be at Ching and that,
on the day of the accident, Mimi, who was a supervisor, had brought the food into his
business on her own to make egg rolls.

 Nguyen agreed that the carrot grating machine--or vegetable shredder--was
"fairly old" and "primitive in a way," including the design. Nguyen initially denied
repairing the machine, but then agreed that he had placed tape onto the wires on the
machine. He also explained that the machine's motor could not restart itself, it was
impossible for the machine to turn off and on by itself, and no one had ever been
injured by the machine. Nguyen noted that it was impossible to operate the machine
as described by Barahona because the operator used a plate to push the carrots into
the machine. Also, it would be a "no-no" for the operator to use her hand to push the
carrots into the machine, and the machine contains a visual warning for the operator
not to put her hand into the machine. Nguyen also explained that one would have to
stick one's hand down into the machine for nine to twelve inches to be injured and
that one's hands are never exposed to the blade if the machine is operated correctly. 
Nguyen further noted that the machine was not operational on the day of the accident,
it had been taken apart, and it had to be pulled out from storage in order for a person
to use it. 

 Maria Melara, one of Barahona's co-workers, testified that she worked for
Nguyen making egg rolls with Barahona and Anna Lopez and that Barahona was
cutting cabbage and carrots on the day of the accident. Melara explained that "[t]he
machine was not good," "it was ruined," it was "broken," and Nguyen knew it was
broken. Using her hands, Melara indicated to the trial court where the operator of
the machine would have to put her hands on the machine in order to use it. During
this explanation, Melara further indicated that the machine's operator had to place her
hand on the machine in a certain way because the machine was "ruined." Melara also
indicated that Barahona's hand may have slipped as a result of where Barahona had
to place her hand. (2) 

 Anna Lopez, another co-worker of Barahona, testified that the carrot grating
machine was "not good" and that, on the occasion in question, it turned on by itself
when Barahona was putting carrots into it. She explained that Barahona pulled out
her hand and fell to the ground bleeding. Barahona was taken by ambulance to a
hospital, where her hand was cleaned and bandaged. Lopez noted that, on the
following day, Barahona had "lots of pain" and went to another hospital because her
hand was swollen and infected. Lopez said that it was "very painful" for Barahona. 
Lopez disputed Nguyen's testimony that the machine had been put away and was not
in working order, claiming instead, "That is the way they had it" and "That is how we
were working." Lopez asserted that Nguyen was aware of the machine's poor
condition and that Ching did not have any supervisors, training manuals, or safety
training. When Lopez went to see Nguyen on the day after the accident, the "machine
was gone." (3) 

 In its final judgment, the trial court ruled in favor of Barahona and awarded her
$17,998.81 for past medical expenses, $3,000 for future medical expenses, $25,808
for past pain and suffering, $10,000 for future pain and suffering, $25,808 for past
physical impairment, $10,000 for future physical impairment, $5,356 for past loss of
earning capacity, $25,808 for past disfigurement, $5,000 for future disfigurement, and
$16,130 for past loss of household services. 

 The trial court subsequently entered eighteen pages of findings of fact and
conclusions of law. Among other things, the trial court found that Barahona had
severely injured her left hand while grating carrots, Barahona was required to work
with an "antiquated" and "defective" machine, the machine had only been repaired
by Nguyen, the machine suddenly and without warning turned itself on and pulled
Barahona's hand into the grater, and Barahona suffered debilitating and disfiguring
injuries to her left hand. The trial court found Nguyen's testimony that Ching was not
engaged in the business of manufacturing egg rolls and that Barahona was not his
employee to be "not credible." The trial court also found that Barahona established
that Ching and Nguyen were negligent in the following ways and that these negligent
acts or omissions proximately caused Barahona's injuries:

(1) Failure to keep and maintain a safe work premises for their
employees;


(2) Failure to keep and maintain safe and suitable equipment for their
employees to work with;


(3) Failure to provide rules and regulations for the safety of their
employees;


(4) Failure to provide an inspector-overseer who would inspect,
oversee and otherwise exercise some control over the work
premises;


(5) Failure to inspect, oversee and otherwise exercise some control
over the premises and its hazardous conditions while plaintiff was
working;


(6) Failure to provide safety training for employees such as plaintiff
who were required to work in hazardous conditions;


(7) Failure to provide plaintiff with safety instructions, guidelines,
and procedures to properly and safely perform her work; and


(8) Failure to warn plaintiff of the dangerous conditions involved in
performing her work.


 The trial court also found that Nguyen failed to warn his workers "of the
dangers of working with defective equipment" and that it was foreseeable to Nguyen
that the machine could cut someone's hand. The trial court further found that Nguyen
"should have contracted the services of a professional to ensure that the repairs to the
[machine] were properly made so as not to pose a danger to the employees." The trial
court stated that it "did not find [Nguyen's] testimony about . . . the working
condition of the [machine] to be credible" and found that the machine "was not in
safe working condition which caused and/or contributed to the [machine] being
defective." 

 In its conclusions of law, the trial court concluded that appellants' failure to
provide a safe workplace, failure to furnish their employees with safety policies and
manuals, and failure to warn Barahona were causes-in-fact of Barahona's injuries.

Sufficiency of Evidence to Support Negligence Findings

 In their first issue, appellants argue that the trial court erred in rendering
judgment in favor of Barahona because she failed to prove that appellants' negligence
proximately caused her injuries. Within this issue, appellants assert that Barahona
had to present expert testimony to support her claims and "no witness credibly
testified that there had been any problem with the machine." In their second issue,
appellants contend that the trial court erred in overruling their motion for directed
verdict and incorporate their argument in their first issue "to avoid redundancy." (4) We will sustain a legal sufficiency or "no-evidence" challenge if the record
shows one of the following: (1) a complete absence of evidence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence offered
to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact.
City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). "More than a scintilla of
evidence exists where the evidence supporting the finding, as a whole, rises to a level
that would enable reasonable and fair-minded people to differ in their conclusions."
Tarrant Reg'l Water Dist. v. Gragg, 151 S.W.3d 546, 552 (Tex. 2004). In conducting
a legal sufficiency review, a court must consider evidence in the light most favorable
to the verdict and indulge every reasonable inference that would support it. City of
Keller, 168 S.W.3d at 822. If the evidence allows only one inference, neither jurors
nor the reviewing court may disregard it. Id. However, if the evidence at trial would
enable reasonable and fair-minded people to differ in their conclusions, then jurors
must be allowed to do so. Id. A reviewing court may not substitute its judgment for
that of the trier-of-fact, so long as the evidence falls within this zone of reasonable
disagreement. Id.

 Appellants are nonsubscribers to the Texas Workers' Compensation Act. See
Tex. Lab. Code Ann. § 406.002 (Vernon 2006). In an action against an employer
who does not have workers' compensation insurance coverage to recover damages
for personal injuries or death sustained by an employee in the course and scope of the
employment, a plaintiff must prove negligence of the employer or of an agent or
servant of the employer acting within the general scope of the agent's or servant's
employment. Id. § 406.033(d) (Vernon 2006); see also Kroger Co. v. Elwood, 197
S.W.3d 793, 794 (Tex. 2006). In such an action, it is not a defense that the employee
was guilty of contributory negligence, the employee assumed the risk of injury or
death, or the injury or death was caused by the negligence of a fellow employee. Tex.
Lab. Code Ann. § 406.033(a) (Vernon 2006); Kroger Co., 197 S.W.3d at 794.

 A common-law negligence cause of action has three elements: (1) a legal duty
owed by one person to another, (2) a breach of that duty, and (3) damages
proximately caused by the breach. Simmons v. Briggs Equip. Trust, 221 S.W.3d 109,
113 (Tex. App.--Houston [1st Dist.] 2006, no pet.) (citing Van Horn v. Chambers,
970 S.W.2d 542, 544 (Tex.1998)); see also Aleman v. Ben E. Keith Co., 227 S.W.3d
304, 310 (Tex. App.--Houston [1st Dist.] 2007, no pet.). "Proximate cause requires
both cause in fact and foreseeability." West Invs., Inc. v. Urena, 162 S.W.3d 547, 551
(Tex. 2005); Aleman, 227 S.W.3d at 310. "Cause in fact means that the defendant's
act or omission was a substantial factor in bringing about the injury which would not
otherwise have occurred." Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex.
1995). "Foreseeability exists if the actor, as a person of ordinary intelligence, should
have anticipated the dangers his negligent act creates for others." Aleman, 227
S.W.3d at 310. The elements of proximate cause--cause in fact and
forseeability--cannot be established by mere conjecture, guess, or speculation. West
Invs., Inc., 162 S.W.3d at 551. 

 "An employer has a duty to use ordinary care in providing a safe workplace." 
Aleman, 227 S.W.3d at 310 (citing Elwood, 197 S.W.3d at 794). "It must, for
example, warn an employee of the hazards of employment and provide needed safety
equipment or assistance." Elwood, 197 S.W.3d at 794. An employer must also
furnish its employees with safe machinery and instrumentalities, instruct employees
in the safe use and handling of products and equipment, and adequately hire, train,
and supervise employees. Aleman, 227 S.W.3d at 310. "An employer, however, is
not an insurer of its employees' safety," and "owes no duty to warn of hazards that
are commonly known or already appreciated by the employee." Id. 

 The focus of the evidence presented by Barahona related to Ching's duty, as
her employer, to furnish her with safe machinery, to instruct her in the safe use and
handling of the machine, and to generally provide her with a safe workplace. 
Barahona presented evidence that the machine was in a general state of disrepair at
the time she was using it. Moreover, she provided testimony that, in its state of
disrepair, the machine was dangerous to work with. Barahona, using her hands,
demonstrated to the trial court how she had to use the machine to grind carrots, and
she explained that the machine grabbed her hand as she was putting carrots into it. 
Although the machine was not introduced into evidence, Barahona explained how the
machine was designed and how she was told to use it. Barahona denied that she
placed her hand into the machine and, significantly, that the machine was designed
with a "lever" and "plate device" that would have allowed her to operate the machine
so that her hands would not get "near the blades." Barahona learned from Mimi,
Ching's employee, how to operate the machine, and she operated the machine on the
day of the accident consistent with the manner that she had always operated it. 

 In addition to Barahona's testimony, Melara noted that "[t]he machine was not
good," "was ruined," and had been broken for "a while." Melara also suggested that
the operator of the machine had to place her hands on the machine in a certain way
because it was broken. Melara also indicated that Barahona sustained her injuries
when her hand slipped from its location on the machine. Lopez agreed that the
machine was "not good," and she stated that, on the occasion in question, the machine
suddenly turned on. Both Melara and Lopez also testified that Nguyen knew the
machine was broken. 

 Even Nguyen agreed that the machine was "fairly old" and "primitive in a
way." He did testify that it was impossible to operate the machine as described by
Barahona and that the machine was equipped with a plate device to push the carrots
into the machine. Nguyen specifically stated that Barahona would have been
committing a "no-no" by using her hands in the manner that led to her injuries, and
opined that Barahona must have stuck her hand into the machine because Barahona's
hand would never have been exposed to the blade if she had used the machine
properly. However, in an apparent contradiction to some of his own testimony,
Nguyen also testified that the machine was not operational on the day of the accident,
had been disassembled, and was in storage. This testimony was offered to support
appellants' assertions that Ching was not operating as a business on the day of
Barahona's injury and that Barahona was not authorized to be on Ching's premises
when she was injured. 

 In sum, Barahona and Nguyen provided conflicting evidence on all three
elements of Barahona's negligence claim. First, while Barahona and her co-workers
testified that Barahona was Ching's employee on the day of the accident, Nguyen
denied that she was his employee, claiming that she was not even authorized to be on
Ching's premises. The trial court resolved this credibility dispute against appellants,
finding that appellants were Barahona's employer and that they had a duty to provide
her with a safe workplace, safe equipment, and proper warnings and instructions on
the safe use of the machine. 

 Second, Barahona testified, among other things, that the machine was broken,
was in disrepair, and, important to the causation element of her negligence claim,
lacked a plate device that would have prevented her hands from getting near the
blades. She also stated that she was using the machine in the normal manner as she
had learned from Mimi, a Ching employee. Barahona's testimony about the poor
condition of the machine, as well as the manner in which she was told to use the
machine, was corroborated by her co-workers. Nguyen testified, in contradiction to
Barahona, that the machine was not even operational and that the machine had a plate
device that, if used properly, would have prevented Barahona's injuries. He
explained that the machine was designed in such a way as to make the accident, as
described by Barahona, impossible. However, the trial court found Barahona's
testimony to be more credible, finding, that appellants had breached their duty to
Barahona by, among other things, requiring her to work with a machine that "was not
in safe working condition" and that appellants had failed to warn Barahona of the
dangers of working with the machine. 

 Finally, Barahona testified that, in the course of using the machine as
instructed, she was injured when her hands came into contact with the machine's
blades. As noted above, Barahona and Nguyen offered contradictory testimony
regarding the condition and the design of the machine. Barahona's testimony
supports the trial court's finding that appellants required her to work with an unsafe
machine, appellants failed to properly maintain the machine, and appellants failed to
properly warn Barahona of the dangers of using the machine and that these negligent
acts or omissions caused her injuries. The trial court apparently rejected Nguyen's
testimony that the machine was equipped with a plate device, making Barahona's
injuries, as described, impossible. Instead, the trial court believed Barahona's
testimony, finding that she sustained her injuries as a result of Ching's negligence in
providing her with the unsafe machine that was in poor working condition. 
Accordingly, we hold that Barahona presented legally sufficient evidence to establish
that Ching, as Barahona's employer, had a duty to provide her with a safe work place,
safe equipment, and proper warnings, Ching breached its duty, and Ching's breach
caused Barahona's injuries. 

 Appellants further argue that Barahona was required to present expert
testimony to support her claims. Generally, courts will find sufficient proof of
causation when lay testimony establishes a sequence of events that provides a strong,
logically traceable connection between the event and the condition. Aleman, 227
S.W.3d at 310 (citing Morgan v. Compugraphic Corp., 675 S.W.2d 729, 733 (Tex.
1984)). However, "[p]roof other than expert testimony will constitute some evidence
of causation only when a layperson's general experience and common understanding
would enable the layperson to determine from the evidence, with reasonable
probability, the causal relationship between the event and the condition." Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 583 (Tex. 2006); see also FFE Transp.
Servs., Inc. v. Fulgham, 154 S.W.3d 84, 89, 91 (Tex. 2004) (holding that expert
testimony was necessary in establishing applicable standard of care on matters not
within the general experience and common understanding of laypersons). Thus,
expert testimony is required when an issue involves matters beyond jurors' common
understanding. Mack Trucks, Inc., 206 S.W.3d at 583. Whether expert testimony is
necessary to prove a matter or theory is a question of law. Id.

 Here, Barahona presented evidence establishing that appellants, through
numerous acts and omissions, failed to provide her with safe equipment with which
to perform her job duties. As noted above, one of the specific, negligent acts
committed by appellants was their furnishing Barahona with a poorly maintained and
unsafe machine that was missing a plate that even Nguyen agrees that, if available,
would have prevented Barahona's hand from coming into contact with the machine's
blades. Nguyen emphasized that Barahona's description of the accident simply was
not possible because the machine had this safety device. However, Barahona testified
that the machine was missing this device described by Nguyen and that she was
injured while using the machine in the manner she was instructed to by another Ching
employee. 

 Accordingly, we further hold that expert testimony was not necessary to aid the
trial court in resolving this credibility dispute.

 We overrule appellants' first and second issues.

Challenges to Additional Findings of Fact and Conclusions of Law


 In their thirteenth and fourteenth issues, appellants argue that the findings of
fact and conclusions of law "attempting to prove that the shredder was defective are
against the greater weight of the evidence" and"there is no evidence that the shredder
was in need of repair" because no witness testified that the machine was
malfunctioning or that anyone had ever been hurt by the machine. Appellants assert,
without citation to any authority, that Nguyen "was the only witness in the case with
the ability" to testify as to whether Barahona could have been injured in the manner
described. 

 In their fifteenth and sixteenth issues, appellants assert that "some findings of
fact are inconsistent" and that there is insufficient evidence to support certain findings
of fact and conclusions of law. The limited briefing provided under these two issues
consists mostly of rhetorical questions and unsubstantiated argument. In their
briefing on their sixteenth issue, appellants do not include a single record reference
cite. See Tex. R. App. P. 38.1(h).

 We have detailed above the evidence sufficient to support the trial court's
findings that appellants' negligence caused Barahona's injuries. To the extent that
appellants are again challenging the legal sufficiency of the evidence to support the
trial court's negligence findings in these issues, based upon our prior holding that the
evidence was legally sufficient, we overrule appellants' thirteenth through sixteenth
issues. To the extent that appellants attempt to raise any additional challenges within
their thirteenth through sixteenth issues, we hold that such issues are inadequately
briefed. See Tex. R. App. P. 38.1(h).

 We overrule appellants' thirteenth, fourteenth, fifteenth, and sixteenth issues.

Nguyen's Individual Liability

 In their ninth, tenth, and twelfth issues, appellants assert that there is no
evidence or insufficient evidence to hold Nguyen personally liable on the theory that
Nguyen operated Ching as a sham, there is no evidence Nguyen "abused [the]
corporate form," and there is "no evidence justifying the findings of fact and
conclusions of law that pierce the corporate veil." 

 Barahona does not respond to these arguments with citation to the record or
legal authority to support the trial court's veil piercing or alter ego findings. In fact,
Barahona effectively concedes that there is no evidence justifying the piercing of
Ching's corporate veil in order to impose personal liability upon Nguyen. 
Specifically, Barahona states in her appellate briefing that "[w]hether the corporate
veil was or should be pierced is a moot question because it is not necessary for
Barahona to pierce the corporate veil in order to impose personal liability on
Nguyen." Barahona further states that "[p]iercing the corporate veil in this situation
is unnecessary." Accordingly, we conclude, based on Barahona's briefing, that she
does not seek to support the trial court's judgment against Nguyen individually based
upon any veil-piercing or alter ego theories. 

 However, we must further address Barahona's assertion that the personal
judgment against Nguyen should remain because "[u]nder longstanding Texas law,
corporate agents can be held individually liable for tortious acts committed while
working for a corporation." 

 In Leitch v. Hornsby, the Texas Supreme Court considered the imposition of
individual liability upon corporate agents and employees for negligence. 935 S.W.2d
114, 117 (Tex. 1996). The supreme court has recently considered this issue again,
and, in summarizing its opinion in Leitch, explained,

The defendants are correct that a negligence finding against an
individual does not automatically result in individual liability when the
individual was acting as the agent or employee of a corporation.
Corporations can, of course, only act through individuals. We explained
in Leitch v. Hornsby when individual liability will be imposed and when
it will not. "[I]ndividual liability arises only when the officer or agent
owes an independent duty of reasonable care to the injured party apart
from the employer's duty." We gave as an example an agent whose
negligence caused an automobile collision while the agent was driving
in the course and scope of employment. An agent, in his individual
capacity, owes a duty to the public to drive with reasonable care.
Therefore, the individual is liable for his or her own negligence, and the
employer is also vicariously liable. The situation in Leitch, however,
was different. The corporate agents were not individually liable even
though the jury had found them and their employer negligent. In that
case, the plaintiff Hornsby was injured when he lifted a sixty-pound reel
of cable. There was evidence that his employer, through its officers and
employees, had declined to provide Hornsby a lifting belt or dolly. We
held that the actions or inactions of the individuals were actions or
inactions "within their capacities as officers" of Hornsby's corporate
employer and that the individuals "had no individual duty as corporate
officers to provide Hornsby with a safe workplace." The individuals
were not liable for their negligence because they "did not breach any
separate duty" to Hornsby. Only their corporate employer was liable for
their negligence.


Tri v. J.T.T., 162 S.W.3d 552, 562-63 (Tex. 2005) (citations omitted).

 In determining that the corporate officers in Leitch could not be held
individually liable, the supreme court focused on the fact that the corporate employer
bore the "nondelegable duty to use ordinary care in providing [the employee] with a
safe workplace." Leitch, 935 S.W.2d at 118. Because the duty to provide a safe
workplace was a "nondelegable duty imposed on, and belonging solely to" the
corporate employer and because the individual corporate officer also being sued for
his negligence did not owe the individual employee this duty and did not breach any
separate duty, the supreme court held that the individual corporate officer could not
be held individually liable for his negligence. Id.; see also Torres v. Trans Health
Management, Inc., 509 F. Supp. 2d 628, 632 (W.D. Tex. 2006) (holding that because
plaintiff employee alleged that defendant corporate employee and corporate employer
committed identical negligent acts related to workplace safety and because "the duty
to use ordinary care in providing employees with a safe workplace is non-delegable,"
Texas law precluded finding of individual liability against defendant corporate
employee).

 Here, as noted above, the trial court found that Ching and Nguyen committed
the identical negligent acts and omissions, all of which related to their failures to
provide Barahona with a safe workplace. The trial court, in its findings, collectively
referred to the "[d]efendants' failure to provide a safe workplace, safety policies and
manuals, adequate and competent supervision, and . . . failure to warn" Barahona of
the dangers of the machine. The trial court itself also stated, in its conclusions of law,
that the defendants had a "primary, continuing, and non-delegable duty to provide a
safe work place and safe conditions in which their employees may work." There was
no finding or conclusion, nor was there any allegation, that Nguyen owed Barahona
an independent duty of care apart from Ching's duty. Accordingly, we hold that the
finding of personal liability against Nguyen cannot be sustained on the basis that he
participated in the tortious conduct.

 We sustain appellants' ninth, tenth, and twelfth issues. 

Witnesses

 In their third issue, appellants argue that the trial court erred in not allowing
them to present the testimony of two witnesses because the testimony of "neither
witness should have been unexpected." Appellants assert that they sought to present
Mimi to offer testimony "relevant to the case" as well as "an unnamed witness who
was waiting in the hallway" to testify that Ching was not making eggrolls at the time. 
Appellants concede that they did not designate either witness in their responses to
Barahona's request for disclosure. However, they note that Barahona had designated
Mimi as a witness, and they assert that the second unnamed witness was a rebuttal
witness. 

 A party may not offer evidence which was not timely disclosed in a discovery
response "unless the court finds that: (1) there was good cause for the failure to timely
make, amend, or supplement the discovery response; or (2) the failure to timely make,
amend, or supplement the discovery response will not unfairly surprise or unfairly
prejudice the other parties." Tex. R. Civ. P. 193.6(a). The party seeking to offer the
evidence at issue has the burden to establish good cause or lack of unfair surprise or
prejudice. Tex. R. Civ. P. 193.6(b). "The trial court has discretion to determine
whether the proponent has met its burden." Brunelle v. TXVT Ltd. P'ship, 198
S.W.3d 476, 477 (Tex. App.--Dallas 2006, no pet.).

 Appellants assert that Mimi's testimony would not have unfairly surprised
Barahona because Barahona had designated Mimi as a possible witness, Barahona
made references to Mimi during trial, and appellants made reference to Mimi during
their opening statement at trial. However, appellants have not cited any authority
establishing that, on these facts, allowing Mimi to testify would not have surprised
or prejudiced Barahona. Nor have they offered any explanation to support a finding
of good cause for their failure to supplement their discovery responses. Accordingly,
we hold that the trial court did not abuse its discretion in excluding Mimi's testimony.

 In regard to the second "unnamed witness" who allegedly was going to testify
that Ching had stopped manufacturing eggrolls long before Barahona was injured,
Barahona's position throughout the underlying case was that she was injured while
making egg rolls for Ching. Again, appellants fail to explain how this unnamed
witness would not have surprised or prejudiced Barahona. Nor have they offered any
explanation to support a finding of good cause for their failure to supplement their
discovery responses with the name of this "unnamed witness." Accordingly, we hold
that the trial court did not abuse its discretion in excluding the testimony of the
"unnamed witness."

 We overrule appellants' third issue.

Loss of Household Services

 In their fourth issue, appellants argue that there is no evidence or insufficient
evidence to support the trial court's award to Barahona for her loss of household
services. Appellants suggest that only Barahona's spouse could make a claim or offer
testimony in support of such an award and that, because Barahona's spouse did not
testify, the award fails. Alternatively, appellants assert that the award of $16,130 for
past loss of household services is excessive. 

 "The term 'household services' generally relates to domestic duties." 
Dougherty v. Gifford, 826 S.W.2d 668, 681 (Tex. App.--Texarkana 1992, no writ)
(citing EDCO Production, Inc. v. Hernandez, 794 S.W.2d 69, 77 (Tex. App.--San
Antonio 1990, writ denied)). "Where there is proof in the records of the nature of the
household services rendered before the injuries and proof that the injuries have
impaired a person's capacity to perform household services in the future, the evidence
is sufficient to sustain an award for future loss of household services." Six Flags
Over Texas, Inc. v. Parker, 759 S.W.2d 758, 762 (Tex. App.--Fort Worth 1988, no
writ).

 Appellants do not cite any relevant authority to support their challenge to the
trial court's award for loss of household services. In fact, appellants' only specific
argument is that "[e]ven if [Barahona's] husband was deprived of certain services,
they might have been because Mrs. Barahona had just given birth and was nurturing
a small child." Assuming that appellants have adequately briefed this issue, we note
that appellants concede that, at the time Barahona suffered from her injuries, she was
married and was raising small children. Moreover, we note that, in support of the
award for her loss of household services, (5) Barahona testified that she had difficulty
grabbing things with her hand and her injuries interfered with her daily tasks. 
Barahona also testified that it was approximately six months after the accident before
she was able to grab something that was not heavy and that the injuries she sustained
in the accident interfered with her daily tasks. Additionally, Barahona testified that
she had a child shortly after accident. Barahona's testimony established that, shortly
after sustaining her injuries and while suffering from those injuries, she was a
housewife and was raising her young child. Thus, the trial court was entitled to
conclude that the daily tasks that Barahona had trouble performing as a result of her
injuries included tasks associated with raising young children. Accordingly, we hold
that the evidence is legally and factually sufficient to support the trial court's award
of damages for loss of household services. 

 We overrule appellants' fourth issue.

Mental Anguish

 In their fifth issue, appellants argue that there is no evidence or insufficient
evidence to support the trial court's award to Barahona for mental anguish because
there is nothing in the record to show that she suffered "more than mere worry,
anxiety, or vexation." 

 In its findings of fact and conclusions of law, the trial court found that
Barahona sustained "physical pain and suffering in the past" in the amount of $25,808
and would sustain "physical pain and mental anguish in the future in the amount of
$10,000." In its judgment, however, the trial court deleted any reference to an award
for future mental anguish. Thus, although appellants challenge the sufficiency of the
evidence to support the awards for both past and future mental anguish, there is
absolutely no mention of an award for past mental anguish in the trial court's
judgment and the only reference to future mental anguish is contained in the findings
of fact and conclusions of law. However, this reference was deleted by the trial court
in its actual judgment. Instead, the trial court labeled these amounts as awards for
past and future physical pain and suffering. 

 Because the trial court's judgment does not contain a mental anguish award,
there is nothing for us to review. Additionally, by failing to raise or brief the
discrepancy between the findings of fact and conclusions of law and the judgment
regarding future mental anguish, appellants have waived any complaint about this
discrepancy. See Tex. R. App. P. 38.1(h).

 We overrule appellants' fifth issue.

Physical Impairment, Pain and Suffering, and Disfigurement


 In their sixth, seventh, and eighth issues, appellants contend that there is no
evidence or insufficient evidence to support the trial court's awards to Barahona for
physical impairment, future pain and suffering, and disfigurement. In their eleventh
issue, appellants contend that there is insufficient evidence to support the trial court's
findings of fact and conclusions of law "regarding severe, disabling, or disfiguring
injuries." 

 The trial court, in its judgment, awarded Barahona $25,808 for past physical
impairment, $10,000 for future physical impairment, $25,808 for past pain and
suffering, (6) $10,000 for future pain and suffering, $25,808 for past disfigurement, and
$5,000 for future disfigurement. In its findings of fact and conclusions of law, the
trial court set forth its calculations for the past physical impairment and past
disfigurement awards. The trial court calculated the number of days from the date of
injury, September 19, 2002, to the date of the judgment, which was 1,613 days, and
then multiplied that number by $1.00 per hour for 16 hours per day. The trial court
did not set forth any calculations for its awards for future impairment, pain and
suffering, and disfigurement. 

 In support of these awards, Barahona cites her testimony that, as a result of the
injury, she felt "really awful" especially during cold weather, and that she "[could]
not grab anything with the hand." Barahona further stated that she "had been
suffering a lot because there would be times when [she] could not grab a cup of water
or a cup of juice." The injury had interfered with her daily tasks because she could
only function with one hand, and she stated that this condition "lasted a long time." 
Specifically, she stated that in order to "grab something with the hand it took about
six months," but even then she could not grab or lift anything heavy. Barahona stated
that she was not able to work during that period and that, had she not been injured,
she would have continued working. Barahona wanted to work, but felt she could not
because she could not "straighten her finger well." Barahona's also demonstrated to
the trial court how far she could bend her left hand, indicating that she could bend her
finger only up to a certain limited point. Barahona stated that her finger hurts when
she "straighten[s] it back out" and that her surgeon, who had performed the first
operation, had told her that she needed another operation to "fix [her] hand." 
Barahona also confirmed that, on the date of trial, she still had pain in her hand,
"[m]ore now that it is cold." When asked if she had "scarring on [her] fingers,"
Barahona said "Yes, because it bothers me because the doctor said that with the screw
that I have inside that is--with the cold it hurts." 

 On cross-examination, Barahona agreed that part of the reason that she did not
work after her injury was because she had had a new baby, but Barahona clarified that
she could not work because her hand "prevent[ed] it," so, instead, she dedicated her
time to taking care of her children. Barahona confirmed that, at trial, she still could
not bend her fingers so she was not able to roll egg rolls. Barahona agreed that her
doctor had told her that after her next operation, she could roll egg rolls again.

 In reviewing the trial court's award for pain and suffering, we note that the fact
finder "is given a great deal of discretion in awarding an amount of damages it deems
appropriate for pain and suffering." HCRA of Tex., Inc. v. Johnston, 178 S.W.3d 861,
871 (Tex. App.--Fort Worth 2005, no pet.). "Once the existence of some pain and
suffering has been established, . . . there is no objective way to measure the adequacy
of the amount awarded as compensation." Id. Moreover, the awarding of damages
for "discretionary injuries" such as pain and suffering "is inherently difficult because
the alleged injury is a subjective, unliquidated, nonpecuniary loss." Id. Here,
Barahona testified, in regard to her physical pain, that the injuries caused by the
machine made her feel "really awful" and she noted that it was painful when she
attempted to bend her fingers. She also stated that her surgeon recommended that she
undergo another surgery. We hold that this evidence is legally and factually
sufficient to support the trial court's award for Barahona's future pain and suffering.

 In regard to the trial court's award for physical impairment, we recognize that
in order to recover such damages, "the effect of any physical impairment must be
substantial and extend beyond any pain, suffering, mental anguish, lost wages or
diminished earning capacity." Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d
757, 772 (Tex. 2003). The "loss of enjoyment of life" may be considered as a factor
in assessing damages for physical impairment. Id. The determination of the amount
of money that will compensate a plaintiff for her impairment "involves a
consideration of elements for which no mathematical standard exists except what an
honest or impartial [fact finder] may deem adequate." Dico Tire, Inc. v. Cisneros,
953 S.W.2d 776, 792 (Tex. App.--Corpus Christi 1997, pet. denied). Here,
Barahona testified that the injuries affected and limited her daily tasks, she explained
that she could not bend her fingers, could not work because of her injuries, could not
lift or handle anything with her injured hand for six months and, at the time of trial,
could not lift anything heavy with her injured hand. Barahona also demonstrated to
the trial court her physical impairment as it existed at the time of trial. We hold that
this evidence is legally and factually sufficient to support the trial court's award for
Barahona's physical impairment.

 Finally, in considering the trial court's disfigurement award, we note that
disfigurement has been defined as that which impairs the appearance of a person, or
that which renders unsightly, misshapen or imperfect, or deforms in some manner.
Goldman v. Torres, 161 Tex. 437, 446, 341 S.W.2d 154, 160 (1960); Doctor v.
Pardue, 186 S.W.3d 4, 18 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). As
with the amount of damages for pain and suffering and impairment, the amount of
damages for disfigurement is also within the province of the fact-finder. Lloyd Elec.
Co., Inc. v. Millet, 767 S.W.2d 476, 484 (Tex. App.--San Antonio 1989, no writ). 
Here, Barahona noted that the grating machine caused her to have scarring and she
showed the scarring to the trial court. We hold that this evidence is legally and
factually sufficient to support the trial court's award for Barahona's disfigurement. 
 We overrule appellants' sixth, seventh, and eighth issues.

 We also consider, in conjunction with reviewing appellants' challenges to
Barahona's damages, appellants' assertion that there is no evidence or insufficient
evidence to support the trial court's findings of fact and conclusions of law
"regarding severe, disabling, or disfiguring injuries." Appellants cite four specific
findings of fact and two specific conclusions of law, but appellants do not separately
brief their challenges to these findings and conclusions. Moreover, without a single
citation to the record within their eleventh issue, appellants assert that there is no
evidence in the record that Barahona continues to suffer physical impairment. 
Appellants' argument is flatly contradicted by the record because, as summarized
above, Barahona testified to her past and current physical impairment at the time of
trial. 

 Accordingly, we overrule appellants' eleventh issue. To the extent that
appellants attempt to assert other challenges to the enumerated findings of fact and
conclusions of law, appellants have inadequately briefed those challenges. See Tex.
R. App. P. 38.1(h). 







Conclusion

 We modify the judgment of the trial court by deleting the portion of the
judgment imposing joint and several liability against Nguyen individually. We affirm
the trial court's judgment as modified.


 

 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.

1. At trial, the parties referred to the piece of equipment with which Barahona was
working as both a carrot-grating machine and shredder.
2. We note that Melara's testimony, much like most of the testimony presented in this case, was
presented through a translator and is, at times, difficult to understand. The reporter's record
reveals that, on many occasions, when the witnesses and/or translator was having difficulty
explaining certain issues, the witnesses used gestures to augment their verbal testimony. For
example, the witnesses used their hands to illustrate to the trial court how a worker was
required to operate the machine. 
3. As her final witness, Barahona presented excerpts from the deposition of her surgeon,
Dr. William Lumsden. We note that although a complete copy of the videotaped
deposition is contained in the record, no written transcript of the deposition is in the
record. 
4. To the extent that the second issue includes any arguments distinct from the first
issue, we conclude that the second issue is inadequately briefed. See Tex. R. App. P.
38.1(h).
5. In its findings of fact and conclusions of law, the trial court set forth its calculation
of its loss of household services as follows: "loss of household services in the past
from September 19, 2002 through the date of the judgment in the amount of $16,130
($2.50 pr/hr x 4 hrs/per day x 1,613 days.)."
6. Appellants do not challenge the trial court's award of $25,808 to Barahona for her
past pain and suffering.